**Allan A. RYAN and Lee Leachman, Comprising a Partnership Known as Ankony Farm, Plaintiffs,**

**v.**

**Coy GLENN, Defendant.**

**No. EC 7083.**

United States District Court,
N. D. Mississippi,
E. Division.

March 25, 1971.

Robert D. Patterson, Aberdeen, Miss., for plaintiffs.

William S. Turner, Aberdeen, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This is a suit to collect $27,620.78 principal and $5,524.16 interest as the balance allegedly due and payable under a contract for the sale of an interest in a prize Aberdeen Angus bull. The suit is brought by Allan R. Ryan and Lee Leachman, citizens of New York, as partners in Ankony Farm (Ankony), against Coy Glenn, an Alabama citizen. Before answer, defendant moved to dismiss for plaintiffs' failure to state a claim for relief and for improper venue. Following briefing and the submission of affidavits, the deposition of defendant, and a stipulation, the case is now before the court for decision on defendant's motion.

We first review briefly the relevant facts. Plaintiffs operate a large cattle business with headquarters at Rhinebeck in eastern New York. Defendant operates a cattle business and a pants manufacturing concern in Mississippi and Alabama, having his main office in Amory, Mississippi. Defendant's operations were formerly incorporated as the Glenn Manufacturing Company and are still listed in the Amory telephone directory as such, but according to his deposition testimony that company has not existed for several years and his businesses are presently unincorporated. At the time the sale contract concerning the bull was formed, Glenn had his personal residence in Amory, but changed it to Sulligent, Alabama, five years ago, or sometime in 1965.

On October 22, 1963, plaintiff Ryan mailed to defendant at his Amory business address a letter offering to sell for $125,000 a one-half interest in Ankonian Jupiter, a prize registered bull owned by Ankony.[1] The letter-offer provided that initial payment of $35,000 be made upon execution of the agreement followed by three deferred payments of $30,000 each, plus 5% interest, falling due on or before April 1, July 1, and October 1, 1964. The offer did not specify any place of payment. Defendant received the letter, signed it as accepted after striking out the words "April 1, July 1, and October 1" and inserting therefor "May 1, August 1, and November 1", initialling the changes, and mailed the document to Ankony at its Rhinebeck, New York, address. This change was then initialled by Ryan, but it does not appear that Ryan ever sent defendant a copy of the letter showing his initialled approval. In his deposition Glenn stated at one point that he received the offer in Amory and inferred that he must have signed it there soon afterward, but at another point he testified that purchase negotiations were conducted by him in New York and that he did not remember where he signed the letter.

On November 12, 1963, defendant wrote a down-payment check of $35,000 on the Bank of Amory and sent it by mail to Ankony, receipt of which was ac-

---

1. Plaintiffs also enclosed a letter proposal for the sale to defendant of an interest in another registered bull, Ankonian Para- gon, which was consummated by the parties and is not involved in this controversy.

knowledged by Ryan's letter of the following day, "as payment in accordance with our Letter Agreement relative to * * * Ankonian Jupiter dated * * * October 22nd, 1963 * * * " Accompanying Ryan's acknowledgement was a second letter suggesting material new provisions concerning custody of Ankonian Jupiter; it was signed as accepted by defendant without amendment and returned to Ryan.

Later, in 1964, Ankonian Jupiter was transported to defendant's cattle farm in Lowndes County, Mississippi, where he has since remained except for appearing in shows at Memphis, Tennessee. As stated, Glenn changed his own residence from Amory to Sulligent, Alabama, sometime in 1965 after the due date of the last installment, which was November 1, 1964. Payments were actually made on the transaction as follows: $20,000 on June 24, 1964, by check drawn on the Bank of Sulligent; $10,-000 on August 27, 1964, by check on the Bank of Amory; $10,000 on August 27, 1964, by check on the Bank of Sulligent; $12,500 on April 10, 1965, on the Bank of Sulligent; and $18,750 on October 11, 1965, on the Bank of Amory, leaving an alleged balance of $27,620.78 principal and $5,524.16 interest still owing. Defendant mailed all checks to Ankony from his business office at Amory.

■■ We consider first the question of personal jurisdiction.[2] Ankony's

complaint was filed on October 21, 1970, seeking personal service of process on defendant at Sulligent, Alabama. In the space entitled "special instructions" on the face of the Marshal's Service Record, plaintiffs' counsel typed the words:

"Defendant resides in Lamar County, Alabama in or near Sulligent, Alabama less than 100 miles from Aberdeen, the site of the United States District Court where this suit is filed. Summons may be served personally on Defendant or left with a competent adult at his residence."

On November 6, 1970, a United States Marshal served a copy of the summons on defendant's wife at the family residence. Manifestly, personal service of process on defendant outside the State of Mississippi did not satisfy the requirements of Rule 4(f), F.R.Civ.P.[3] Plaintiffs could have obtained proper service of process on Glenn in this diversity case under either Rule 4(d) or 4(e) (2) since it appears that he was present at his Armory, Mississippi business office nearly every week and subject to personal service within the state and also owned considerable property subject to attachment or seizure in Mississippi; it appears, however, that plaintiffs may not under Rule 4(e) (1) invoke the state Long-Arm statute which, by its terms, is available only to resident plaintiffs.[4]

2. Bookout v. Beck, 354 F.2d 823 (9 Cir. 1965); Vogel v. Tenneco Oil Co., 276 F.Supp. 1008 (D.C.D.C.1967).

3. Rule 4(f) Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

4. Rule 4(d) Summons: Personal Service. * * * Service shall be made as follows:

(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally * * *.
Rule 4(e) Same: Service Upon Party Not Inhabitant of or *Found Within State.* * * * Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his

Plaintiffs do not argue that the out-of-state service of process on defendant was valid, but contend that he has waived the point under Rule 12(g) and (h) [5] by filing a motion to dismiss for failure to state a claim under Rule 12(b) (6) and omitting therefrom his attack on process. Since Rule 12(h) is stated in the alternative, a defendant waives all defenses to defective process by *either* (A) omitting his objections to process from a Rule 12(b) motion, *or* (B) failing to include them in such motion or his responsive pleading. Rule 12(g), which is incorporated in (A) above, requires that all defenses other than the non-waivable ones specified in Rule 12(h) (2), which does not include defective process, must be raised in a single motion.

The byzantine complexities of this rule, supposedly adopted to simplify pleadings in federal court, seem to be an unnecessary trap for the unwary. Nevertheless, it appears relatively well-settled that the Rule "clearly" requires that such defenses as lack of personal jurisdiction, defective process, and improper venue are waived by a defendant if he omits them from a pre-answer motion, such as a motion to dismiss for failure to state a claim under Rule 12(b) (6).[6]

Directly in point is Stavang v. American Potash & Chemical Corp., 344 F.2d 117 (5 Cir. 1965). In that case defendant first moved to dismiss on the sole ground that the complaint failed to state a claim on which relief could be granted. Later he filed another motion attacking the validity of process and service thereof. After the district court had considered the second motion, the Fifth Circuit held on appeal that all challenges to personal jurisdiction had been waived when omitted from the original 12(b) (6) motion to dismiss. At pages 118–119 of its opinion the Fifth Circuit quoted Professor Moore as follows:

"If a defendant proceeds first on the merits, as by motion to dismiss for failure to state a claim or by an answer on the merits, and thereafter attempts to challenge jurisdiction over his person or improper venue, the challenge should fail; it comes too late, and has not been made in the manner prescribed in Rule 12." Citing from 2 Moore's Federal Practice § 2262.

---

property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule. (Emphasis added)
Miss.CodeAnn. § 1437.

5. Rule 12(g) Consolidation of Defenses in Motion. A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h) (2) hereof on any of the grounds there stated.

(h) Waiver or Preservation of Certain Defenses.

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15 (a) to be made as a matter of course.

(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

6. 5 Wright & Miller, Federal Practice & Procedure, §§ 1384–1385, pp. 835–839 (1969).

On almost identical facts the District Court of Rhode Island recently held to the same effect, explaining the policy of the waiver rule thus:

"Whatever may have been the defendant's reason for not raising her additional defenses on her initial motion, the fact remains that she did not do so. She could have saved all her grounds by making a consolidated motion and still have obtained the expeditious dismissal on the 12(b) (6) basis she now claims to have been seeking. To permit this defense to be raised now would undermine the very purpose of Rule 12(g), (h), which is the avoidance of time-consuming, piece-meal litigation of pre-trial motions." Tiernan v. Dunn, 295 F.Supp. 1253, 1256 (D.C.R.I.1969).

Analogous cases to the same effect are numerous.[7] We note two cases in which defendants were allowed to amend their original motion to dismiss for failure to state a claim to add additional defenses attacking venue and personal jurisdiction, on the ground that no detriment to the rights of plaintiff would result therefrom.[8] Even though defendant omitted the defense of defective process from his motion and initial brief, we directed the parties to submit supplemental briefs discussing the validity of process and possible waiver of objection thereto by defendant. The supplemental brief submitted by defendant's counsel, although citing one case holding that federal process does not run beyond the state in which the court sits,[9] reiterated throughout its argument that *subject-matter* jurisdiction could not be waived, and omitted any discussion of waiver of *personal* jurisdiction, which is the matter in issue here. At no time has defendant moved to amend his pre-answer motion to include insufficiency of process as a defense. While we agree with defendant that federal courts are courts of limited jurisdiction, and that Rule 12(g) and (h) lack clarity and are complex and reminiscent of "code pleading" rules, under the circumstances here presented we feel compelled to hold that defendant has waived objection to the defective process. In exercising its discretion in this matter, the court has noted from the pleadings and statutes that this suit was filed only a few days before the tolling of the six-year Mississippi statute of limitations here applicable, and that if the suit were now dismissed, the action would be barred in Mississippi and all other possible forums.[10]

Although we do not agree with plaintiffs that this court is absolutely barred from raising sua sponte its alleged lack of personal jurisdiction of defendant, the court concludes that in the interest of justice it should decline to exercise its discretion to raise that question now and allow the case to proceed to a decision on its merits. This decision is in line with the refusal of the courts in the cases cited in Fn. 7 above to raise similar questions on their own motion after the parties had effectually waived them under Rule 12. The rule would in fact be seriously undermined if courts continued to raise defenses to

---

7. Hays v. United Fireworks Mfg. Co., 420 F.2d 836 (9 Cir. 1969) ; Concession Consultants, Inc. v. Mirisch, 355 F.2d 369 (2 Cir. 1966) ; Goff v. AAMCO Automatic Transmissions, Inc., 313 F.Supp. 667 (D.C.Md.1970) ; Guenther v. Morehead, 272 F.Supp. 721 (D.C.Iowa 1967).

8. MacNeil v. Whittemore, 254 F.2d 820 (2 Cir. 1958) ; Martin v. Lain Oil & Gas Co., 36 F.Supp. 252 (D.C.Ill.1941).

9. Howard v. United States ex rel. Alexander, 126 F.2d 667 (10 Cir. 1942), cert. den. 316 U.S. 699, 62 S.Ct. 1297, 86 L.Ed. 1768.

10. In the absence of a pending action, the contract sued upon became barred in Mississippi on October 31, 1970. Miss.Code Ann. § 722. In both Alabama and New York the limitation periods are six years for actions generally and four years for suit upon breach of contract for sale of goods. For New York see C.P.L.R. § 213 and UCC 2-725, and in Alabama see Code, Tit. 7, § 21 and UCC 2.725.

personal jurisdiction after the parties had waived them.

We next consider the first ground of defendant's motion to dismiss, i. e., the failure of the complaint to state a claim for relief. Rule 8(a) states the requirements of a claim.[11] The complaint in this cause clearly meets the jurisdictional requirement since the parties are citizens of different states, New York and Alabama, and the principal amount in controversy, $27,620.78, exceeds the $10,000 jurisdictional amount requirement. 28 U.S.C. § 1332(a). The complaint is also clear in its allegations of fact, gives defendant fair notice of the charges he must meet, and makes a sufficient demand for judgment.

Under Rule 12(b),[12] a motion to dismiss for failure to state a claim shall be considered as a motion for summary judgment under Rule 56 when matters outside the pleadings are before the court, and the parties may be allowed to offer relevant evidentiary material, which the parties have here done by submitting affidavits, counter-affidavits, the deposition of defendant and a stipulation.

 It is firmly established in this circuit and elsewhere that summary judgment should be granted with great caution and only where it clearly appears that there is no genuine issue as to a material fact and the movant is entitled to judgment as a matter of law.[13]

In the case at bar, the complaint, taken with the stipulation and defendant's deposition, clearly establish that the parties entered into a contract of sale on which defendant is now in arrears. No answer having to date been filed, these averments stand uncontradicted and at this point fairly state a claim on which relief could be granted. In fact, under one interpretation of Rule 56, if the moving party fails to allege facts placing in dispute the allegations of his adversary, summary judgment may be granted by the court to the non-moving party.[14] An issue of fact does, however, appear to exist concerning the date when the contract was actually made, which might be decisive. The registration certificate of Ankonian Jupiter recites the date of sale to defendant as September 1, 1963, nearly two months before the written contract sued upon was made. We cannot agree at this time with defendant that the October 22 instrument was a mere affirmation of an earlier agreement consummated by delivery of the Registration Certificate. The Certificate is not equivalent to a deed; although it might be evidence of an earlier contract and certainly raises a question of fact as to when the contract to sell an interest in Jupiter was made, the Certificate is unsigned and does not show who issued it or for what purpose or whether it was ever delivered and

---

11. Rule 8. General Rules of Pleading.
 (a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled.

12. Rule 12(b). How Presented * * * If, on a motion asserting the defense num-

bered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

13. National Screen Service Corp. v. Poster Exchange, Inc., 305 F.2d 647 (5 Cir. 1962).

14. 6 Moore's Federal Practice § 56.12, pp. 2241–2246 (1966).

thus could not, in itself, operate to transfer title.

■■ Since it appears that the complaint raises factual issues and that defendant is not entitled to judgment as a matter of law, his motion to dismiss for failure to state a claim for relief or for summary judgment in his favor will be denied. Also, the failure of plaintiffs to attach to their complaint a copy of the contract sued upon is not ground for dismissal of the complaint, since attachment of a contract sued upon is permissive only, and not mandatory.[15]

■ Finally, we consider defendant's motion to dismiss for improper venue. Venue has been aptly described as the place where jurisdiction may properly be exercised.[16] In federal district courts venue is governed by statute, 28 U.S.C. § 1391.[17] Since neither plaintiffs nor defendant resides in Mississippi, venue could be proper here, as defendant argues, only if the "claim arose" within this judicial district. Interpretation of the phrase "in which the claim arose" is not without difficulty, since it was not added to the venue statute until 1966. The weight of authority now appears to favor the view that "claim" means the aggregate of operative facts giving rise to a right enforceable in the courts, and where the "claim arose" is, therefore, a question of substantive law requiring federal courts in diversity cases to apply state substantive law under the *Erie* doctrine.[18] Admittedly it might be argued that venue is procedural and purely a question of federal law under *Erie,* but we consider the former view more practical and will follow it, having found no case law to the contrary.

■ Although there is a sharp split of authority on the point, the better view is that the burden of proving proper venue rests with plaintiffs.[19] Plaintiffs argue that venue is proper in the judicial district of Northern Mississippi since the contract was made there, payments under it were to be made there, and the failure to pay, which was the breach giving rise to the claim sued upon, occurred there. Defendant rejects these contentions, urging that the claim arose in New York, and venue was proper only in that state or in Alabama.

■ Under Mississippi law a contract is made when and where it is accepted by the offeree.[20] The issue in the present case is thus whether defendant accepted Ankony's offer in Mississippi. As to this, Glenn's testimony is

15. Rule 10(c), F.R.Civ.P.; 5 Wright & Miller, Federal Practice & Procedure, § 1327, pp. 448–449.

16. Brown v. Pyle, 310 F.2d 95 (5 Cir., Miss.1962).

17. That statute provides:
"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

18. Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252 (E.D.Pa.1968); see the excellent discussion of this subject in "Federal Venue Amendment—Service of Process, *Erie* and Other Limitations," 16 Cath.L.Rev. 297–319 (1967).

19. Hawkins v. National Basketball Association, 288 F.Supp. 614 (W.D.Pa.1968); United Industrial Corp. v. Nuclear Corp. of America, 237 F.Supp. 971 (D.C.Del. 1964); but cf. contra; United Rubber etc. Workers v. Lee Rubber & Tire Corp., 269 F.Supp. 708 (D.C.N.J.1967), aff'd 394 F.2d 362 (3 Cir. 1968), cert. den. 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed. 2d 105.

20. Couret v. Conner, 118 Miss. 374, 79 So. 230 (1918); Mid-Continent Telephone Corp. v. Home Telephone Co., 319 F.Supp. 1176, 1187 (N.D.Miss.1970).

conflicting. He stated at one point in his deposition that he received the offer in Amory, Mississippi, but wasn't sure where he had signed it (dep. p. 27), yet his statements in other portions of the deposition strongly infer that he signed it in Amory shortly after receiving it (dep. pp. 10, 14). The letter was addressed to him at Amory, where he then had both his residence and main business office. It is reasonable to conclude that defendant signed the contract there, and not in New York where preliminary negotiations had taken place; and his testimony as to receipt, signature and return mailing to Rhinebeck convince us that he signed the contract in Amory.

 Adopting as more reliable Glenn's recollection that he signed the contract in Mississippi, we consider whether the changes in payment dates which he made and initialled constituted a rejection of Ankony's offer and a counter-offer by defendant. In Hutton v. Hutton, 239 Miss. 217, 119 So.2d 369 (1960), the Mississippi Supreme Court considered an analogous issue. In that case a prospective seller sent the buyer a letter-offer proposing to sell him certain property for $30,000 cash. The buyer accepted by return letter stating that he would pay by cashier's check rather than cash, as specified by the offer. The buyer's letter was held a proper acceptance and not a counter-offer by the State Supreme Court, which adopted as the law of Mississippi the following statement from Corpus Juris Secundum:

> "If an offer is accepted as made, the acceptance is not qualified or conditional because of the expression of a hope, request, or suggestion, or because of the insertion of an immaterial variation or condition." 91 C.J.S. Vendor & Purchaser § 31b (4), p. 882. (Emphasis added).

Since the inked insertions by Glenn were more than suggestions or requests, the question is whether the one-month delays on payment dates were material. The materiality of contractual provisions can be determined either from the context of the contract itself, or from the intentions of the parties as expressed in their actions in performing the contract. Generally, time and place of payment are essential to contracting parties. In the present case, however, no place of payment was specified; in the three weeks between Glenn's signing and modification of Ankony's letter and the receipt by Ankony of Glenn's down payment, plaintiffs expressed no displeasure or disapproval of Glenn's date changes. Nor did they communicate to him that they agreed with his changes as they certainly would have felt compelled to do had they considered the changes material to their agreement. The fact that Ryan initialled them does not persuade us that he considered the changes a counter-offer. Moreover, after the initial down payment, every single check which defendant sent to Ankony as payment on the contract was mailed at least one month and sometimes several months after the due dates established by his variation to the original offer; the record does not reveal that Ankony ever objected to these late payments, which convinces us that the precise times of payment contained in the offer were not so vital to the contract that the one-month delays inserted therein by Glenn constituted material variances in the initial contract sufficient to reject Ankony's offer and set up a counter-offer.

 Even if the amendments amounted to a counter-offer, the later contract offered to defendant by Ankony on November 14, 1963, which contained new, materially different provisions concerning possession of Jupiter, which were admittedly accepted without charge by Glenn in Mississippi, was apparently, upon the present state of the record, a contract made and accepted in

Mississippi which superseded the prior contract and incorporated its provisions.

■■■■■ Having determined that the contract in suit was made in Mississippi, and that it did not specify a place of payment, we apply the Mississippi rule that the place of payment in such case is the place where the contract was made, i. e., accepted.[21] That such was also the intention of the parties is evidenced by the fact that the down payment and five later payments were made from Amory by checks drawn against Mississippi and Alabama banks. No objections to payment by checks mailed from defendant's business office were ever voiced by Ankony. It is also the general rule that a payor is not required to leave the state of his residence to make payment unless the contract so specifies. 40 Am.Jur., Payment, § 18, p. 274. We reject defendant's argument that "payment" occurred only when plaintiffs' bank, The Chemical Bank New York Trust Company, actually honored defendant's checks. Although mere deposit of a check in the mail may not in every case constitute payment, where the parties have followed a clearly-established custom and practice of payment by check, as here, courts will consider payment made as of the mailing of the check.[22] Having determined the place of payment to be Mississippi, we must conclude that venue is properly laid in the district of Northern Mississippi, since that was where defendant's failure to pay occurred, and this failure constituted the breach of contractual duty from which plaintiffs' claim arose.

Let an order be entered overruling defendant's motion to dismiss.

21. Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 169 Miss. 196, 150 So. 205 (1933); Jones v. Perkins, 29 Miss. 139 (1855). This is also the general rule. See 40 Am.Jur., Payment, § 18, p. 724.

22. Colonial Life & Accident Ins. Co. v. Wilson, 246 F.2d 922 (5 Cir. 1957); Jefferson Standard Life Ins. Co. v. Wisdom, 58 F.2d 565 (5 Cir., Miss., 1932).