(609 P.2d 1146)

No. 50,654

DOROTHEA MAE BRAY and ROBERT BRAY, *Appellants,* v. HUGH G. BAYLES and RALPH N. SUMNER, *Appellees.*

Petition for review granted June 26, 1980.

Opinion filed April 18, 1980.

*Brian G. Grace* and *Jack Scott McInteer*, of Curfman, Brainerd, Harris & Weigand, of Wichita, for appellants.

*Steven W. Rogers*, of Fredonia, and *Shirley W. Keeler*, of Blackwell Sanders Matheny Weary & Lombardi, of Kansas City, Missouri, for appellee Hugh G. Bayles.

*Richmond M. Enochs* and *Daniel P. Hanson*, of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, for appellee Ralph N. Sumner.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is an appeal by the plaintiffs, Dorothea Mae Bray and her husband, Robert Bray, from an order that dismissed their medical malpractice suit as being barred by the statute of limitations (K.S.A. 60-513[a][4]).

The alleged malpractice took place on March 5 and 6, 1976. The facts upon which plaintiffs rely to prove malpractice and the

extent of the injuries to Mrs. Bray are immaterial to this decision. We do note, however, the seriousness of the medical problems that Mrs. Bray alleges resulted from the defendants' negligence, including a complete hysterectomy, partial permanent renal failure, temporary colostomy, pituitary gland damage, and permanent loss of eyesight.

Mrs. Bray gave birth to her first child in Wilson County, Kansas, on March 5, 1976. Her treating physician was Dr. Hugh G. Bayles. Complications arose immediately after the birth and Dr. Ralph N. Sumner was called in. Throughout the remainder of that day and until Mrs. Bray was transferred to The Wesley Medical Center in Wichita, Kansas, on the following day (March 6, 1976), care and treatment of her was administered under the direction of both Dr. Bayles and Dr. Sumner.

Although not significant to this decision, plaintiffs filed suit first in Sedgwick County against Dr. Bayles. Personal service was obtained, but upon motion by Dr. Bayles that venue did not lie in Sedgwick County, the case was transferred to Wilson County. Some nine months after suit was filed, plaintiffs voluntarily dismissed the lawsuit without prejudice, even though Dr. Bayles objected to the dismissal. Three months later, on October 26, 1977, the lawsuit was refiled in Greenwood County, Kansas. Dr. Sumner was named as an additional defendant. Plaintiffs were unable to obtain service in Greenwood County, and twenty-one days before the statute ran plaintiffs chose to have service made in Wilson County, the defendants' home county. Of some significance is the fact that the plaintiffs did not refile the suit in Wilson County, and as a result the 90-day relation back time period expired before service was obtained (K.S.A. 60-203).

On February 15, 1978, plaintiffs obtained service in the following manner. Summonses were mailed to the sheriff of Wilson County, who served them by leaving the copy for each doctor at the receptionist's desk in his office. The return on service of summons is identical for each doctor except for the names. The return on Dr. Sumner states that it was served:

"(2) By leaving on the 15TH day of FEBRUARY, 1978, for each of the within-named defendants AT THE OFFICE OF DR. RALPH N. SUMNER _____

A copy of the summons, a copy of the petition, and _____
at the respective dwelling place or usual place of abode of said defendants with some person of his or her family of suitable age and discretion."

All of the above-quoted portion of the return is a preprinted form in small print except for that portion inserted on the lines, which is filled in by typewriter in much larger type.

On February 22, 1978, Dr. Bayles moved to dismiss or transfer the case for improper venue, for a more definite statement, and to dismiss for failure to state a claim. The two-year statute of limitations, unless tolled, expired on March 6, 1978. Two days later, on March 8, 1978, Dr. Sumner filed a motion to dismiss for improper service of process. Dr. Bayles then requested permission to amend his previously filed motion to include, among other things, dismissal of plaintiffs' action due to insufficiency of service of process. The request to amend was received by plaintiffs on March 9, 1978, one day prior to its filing. Plaintiffs immediately arranged for reservice. Dr. Bayles was re-served on March 9, 1978, and Dr. Sumner was re-served on March 10, 1978. Those services are not disputed. Subsequently, the Brays filed a motion for leave to amend process and service of process to correct the alleged defects in service which had been raised by the defendants. In essence, the Brays wanted to amend the original service so as to show the personal service obtained on March 9 (Bayles) and March 10 (Sumner) to effect a relation back, which plaintiffs argue is permitted by the federal rules under certain circumstances. Discovery was permitted and will be referred to as applicable in this opinion. The case was transferred to Wilson County where Dr. Bayles was allowed to amend his motion so as to raise improper service. The trial judge then held the original service to be invalid, refused to permit the plaintiffs to amend service, determined that the statute of limitations was not tolled and that plaintiffs' cause of action was barred.

Plaintiffs appeal, contending (1) that the original February 15 service was valid as to Dr. Bayles because he had waived any objection to insufficiency of service and was valid as to Dr. Sumner because his receptionist had apparent authority to accept service, which he was estopped to deny because of his prior conduct; (2) that the trial court erred in refusing to allow plaintiffs to amend service of process; and (3) that the statute of limitations was tolled until after the second service by virtue of the defendants having been absent from the State of Kansas.

The evidence in this case is completely documentary, thus bringing into effect the rule recently restated in *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, Syl. ¶ 2, 592 P.2d 74 (1979):

"Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine de novo what the facts establish."

Both defendants admit to having been absent from the state at various times during the two-year period, and plaintiffs rely on that fact to toll the statute of limitations. Dr. Bayles was out of the state five different times for a total of 23 days, but he was not out of the state at any time after plaintiffs filed their suit on October 26, 1977. Dr. Sumner was out of the state four different times for a total of either nine or ten days; he was out two days (October 27 and 28, 1977) after the suit was filed. Dr. Sumner was not personally served until four days after the two-year statute of limitations had expired, so plaintiffs would not benefit by tolling the statute for the two days defendant Sumner was out of state after the lawsuit was filed. Accordingly, we do not consider whether absence from the state after suit is filed is to be treated differently under the statute than absence from the state before suit is filed. Neither defendant was ever absent from Kansas for more than one week at any one time. Plaintiffs do not contend nor would the record support a finding that the defendants' whereabouts were unknown or unascertainable, for employees of both defendants and of the hospital knew where defendants were and plaintiffs could have discovered the location at any time they desired to do so. Plaintiffs' failure to obtain service prior to their having obtained service in Wilson County appears to have been a result of their attempt to establish venue in Greenwood County by intercepting defendants as they drove through Greenwood County enroute to or coming from Wichita and not a result of defendants having been out of the state for brief periods before suit was filed.

This Court recently had occasion to examine the meaning of K.S.A. 60-517 in *Carter v. Kretschmer*, 2 Kan. App. 2d 271, 272, 577 P.2d 1211, *rev. denied* 225 Kan. 843 (1978). In that case, this

Court ruled that absence from the state as contemplated by K.S.A. 60-517 means *beyond the reach of process from our courts;* consequently, it found that the tort statute of limitations was not tolled even though the defendant moved out of the state, because the defendant was still amenable to service either through our long arm statute or as a nonresident motorist. It was possible for plaintiffs here to get service on the defendants at all times either by serving them under the long arm statute for alleged tortious conduct in the state (K.S.A. 60-308[b][2]) or by simply requesting an order from the district court allowing service to be made by leaving a copy of the petition and the summons at the residence of defendants because plaintiffs, after exercising due diligence, could not find the doctors to effect personal delivery (K.S.A. 60-304[a]). The trial court did not err in finding that the statute of limitations was not tolled by the defendants' brief absences from the state at various times prior to suit having been filed in Greenwood County.

Neither do we find that the trial court erred in allowing the defendant Bayles to amend his original motion to include a request for dismissal of plaintiffs' action due to insufficiency of process or insufficiency of service of process. K.S.A. 60-212(g) and (h) seem to prohibit a *second* 212(b) motion, or an answer filed after a 212(b) motion has been decided, from raising insufficiency of process or insufficiency of service of process as a defense; it does not, however, preclude the *amendment* of the initial motion to include additional grounds if the request to do so is timely made. This procedural quirk is discussed in 5 Wright & Miller, Federal Practice and Procedure: Civil § 1389 (1969):

"Although not expressly provided for in Rule 12(g), a preliminary motion may be amended to include a defense or objection inadvertently omitted. The general principles relating to the amendment of motions apply under Rule 12(g). A good illustration is provided by MacNeil v. Whittemore [254 F.2d 820, 821 (2d Cir. 1958)], in which the Second Circuit affirmed the district court's grant of leave to amend a motion to dismiss by adding a defense of improper venue. The court, speaking through Chief Judge Clark, held:

'The only claim is waiver, because defendant first sought a dismissal for failure to state a claim and two days later moved for leave to amend his motion by adding the venue objection. When the court came to hear the motion nearly a month later, it granted the leave to amend and then dismissed because of the lack of venue. This was quite proper. * * * [Rule 12] does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing.'

In another case, Martin v. Lain Oil & Gas Company [36 F. Supp. 252, 255 (D.C. Ill. 1941)], defendant also was permitted to amend a motion attacking the court's subject matter jurisdiction so as to include a venue challenge. The court held:

'The spirit of the Federal Rules of Civil Procedure, as it seems to me, is opposed to the technical waiver of claimed jurisdictional and procedural rights, including venue, by omission from the motion as originally filed so long as they are thereafter made part of the motion by leave of court and the entire motion is presented to the court in due time under said Rule 12(b). Here all grounds, including the additional grounds filed by leave of court four days after the filing of the motion in its original form, were presented as a single motion. No delay resulted and no rights of plaintiff were lost or endangered by the lapse of four days before the additional grounds were made part of defendant's motion to dismiss.'

A motion to amend the grounds of the original motion should be sought as far in advance of the hearing on the motion as possible. The court also must be satisfied that the litigant is acting in good faith and that the adverse party will not be prejudiced if expansion of the motion's scope is allowed."

See also 2A Moore's Federal Practice § 12.22 (2d ed. 1979). In a more recent case, *Bechtel v. Liberty Nat. Bank,* 534 F.2d 1335, 1341 n. 8 (9th Cir. 1976), the Circuit Court of Appeals reaffirmed this rule:

"Bechtel argues that the bank waived venue by waiting more than two months to amend its original motion to dismiss. But Rule 12(h)(1), Fed. R. Civ. P. 'does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing.' [Citation omitted.]"

The many cases cited by plaintiffs are distinguishable as dealing with *successive* motions or answers or as cases in which the question of amendment was not before the court. As defendant Bayles points out in his brief, two cases cited by plaintiffs actually suggest that an attempt to amend might have changed the result in the case. *I.e., Ryan v. Glenn,* 52 F.R.D. 185 (N.D. Miss. 1971); *Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir. 1977).

The district court had the power to grant an amendment, so the question becomes whether or not the trial judge abused his discretion in allowing such an amendment. The crucial consideration in determining whether or not the allowance of an amendment is prejudicial to the opposing party is if the amendment will be timely enough to give the opposition an opportunity to attack the new defense. 5 Wright & Miller, Federal Practice and Procedure: § Civil 1194 (1969) states at 44-45:

"On the other hand, Rule 12(h)(1) states that the defenses enumerated in Rules 12(b)(2) through 12(b)(5) must be consolidated with the original motion and are to be treated as waived unless they are asserted on that one occasion. If the grounds for relief are not properly consolidated, they theoretically are lost as far as amendability and subsequent motions are concerned. Nonetheless, a court probably will permit a Rule 12(b) motion to be amended to assert another Rule 12(b) defense when the amendment is sought promptly and before the parties have relied on the original grounds. The court should use a test based on whether movant's adversary will be prejudiced or the case unduly delayed."

Here, the motion to amend was filed March 10, 1978, well in advance of the October 5, 1978, hearing on the matter. The granting of an amendment that will allow a defendant to set up the statute of limitations does not per se result in such prejudice to the plaintiff that the amendment cannot be granted. See *Schwartz v. American Stores Company,* 22 F.R.D. 38 (E.D. Pa. 1958). Furthermore, one who claims abuse of discretion has the burden of proving that contention, and when reasonable persons could differ as to the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. *McColm v. Stegman,* 3 Kan. App. 2d 416, Syl. ¶ 2, 596 P.2d 167 (1979).

Plaintiffs argue that they were prejudiced in that if they had received earlier notice of the motion they could have cured the ineffective service by re-serving defendants. Undoubtedly that argument was vigorously presented to the trial judge and rejected by him. Both returns of service state that service was left "at the office" of the two doctors and these returns were filed February 16, 1978, with the Greenwood County Clerk of the District Court. K.S.A. 60-312(d) provides in pertinent part:

"Immediately upon receipt of the return upon any summons or other process by the clerk of the court issuing the same, such clerk shall mail a copy of such return to the attorney for the party requesting the issuance of such summons or other process, or, if such party has no attorney, then to the requesting party himself."

Plaintiffs do not claim they failed to receive this return. In view of the facts of this case, and of the court's policy of liberality in granting amendments, we cannot say that no reasonable man would have allowed the amendment.

Service of process on individuals is governed by K.S.A. 60-304, which provides in pertinent part:

"The summons and petition shall be served together. The plaintiff shall furnish the clerk such copies of the petition as are necessary. Service shall be made as follows:

"(a) *Individual.* Upon an individual other than a minor or an incapacitated person, by delivering a copy of the summons and of the petition to the individual personally or by leaving copies thereof at such individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the petition to an agent *authorized by appointment or by law to receive service of process,* but if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given. A judge of the district court, upon a showing that service as prescribed above cannot be made with due diligence, may order service to be made by leaving a copy of the summons and of the petition at the defendant's dwelling house or usual place of abode."

Kansas cases interpreting K.S.A. 60-304(*a*) have uniformly held that service of process on a secretary working in a defendant's business office is insufficient to allow a court to gain personal jurisdiction over the defendant. See *Haley v. Hershberger,* 207 Kan. 459, 485 P.2d 1321 (1971); *Thompson-Kilgariff General Insurance Agency, Inc. v. Haskell,* 206 Kan. 465, 479 P.2d 900 (1971); *Briscoe v. Getto,* 204 Kan. 254, 462 P.2d 127 (1969). *Briscoe* is particularly enlightening:

"Before there can be a valid personal service of process there must be a substantial compliance with some method of process provided in K.S.A. 60-301, *et seq.* It is only after substantial compliance that irregularities and omissions are cured by awareness of a pending proceeding. K.S.A. 60-204, insofar as material here, provides:

" '. . . In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his person, status or property were subject to being affected.'

"This is a case of first impression and we find no precedent to guide us. However, as we read the statute it seems clear that new methods of service were not anticipated. There must first be substantial compliance with some statutory method of service. Irregularities or omissions will then be ignored if the court finds that the party to be served was made aware that an action or proceeding was pending, etc.

. . . .

"There is no provision for service of summons by leaving a copy with the secretary of the person to be served or by leaving a copy at the place of business of the person to be served. Such new method of service cannot be originated by K.S.A. 60-204." 204 Kan. at 256-57.

Plaintiffs attempt to distinguish the rule in these cases by contending that the receptionists served in this action were "agents authorized by appointment or law" to receive service of process, an argument they suggest could have changed the result in the

trilogy of Kansas secretary-service cases had it been raised at that time. An examination of the briefs in *Thompson-Kilgariff* reveals that the plaintiff there alleged in his brief on appeal that the defendants should have shown that the office manager served was not an agent authorized to receive service. It is not clear, however, whether the issue was raised at trial and the Supreme Court did not specifically mention the argument in its opinion.

It appears from plaintiffs' brief that they are alleging that the receptionists had been impliedly appointed as agents to receive service of process by the defendants or, in the alternative, that defendants are estopped by law from denying the existence of such an agency based on their previous course of conduct, particularly that of Dr. Sumner, who on several occasions appeared before various courts to testify, without objection, even though subpoenas had been left with his office staff in derogation of K.S.A. 60-245(*c*) which requires personal service of subpoenas. Defendants argue that the only method by which an individual can become an appointed process agent is set out in K.S.A. 60-306(*a*). While in our view it appears that defendants' argument is incorrect, the question has never before been considered by the Kansas courts and we need not address it here, for plaintiffs were unable to meet their burden of proof that defendants' receptionists were agents actually appointed to receive service of process even under the common law principles of agency.

Rules for determining an agency relationship were set out in *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 548 P.2d 719 (1976), as follows:

"Where the relationship of principal and agent is in issue, the party relying thereon to establish his claim or demand has the burden of establishing its existence by clear and satisfactory evidence." Syl. ¶ 1.

"The determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove its existence is a question of law." Syl. ¶ 2.

"A relationship of principal and agent will not be inferred merely because a third person assumed that it existed." Syl. ¶ 3.

"To determine whether the record establishes an agency by agreement, it must be examined to ascertain if the party sought to be charged as principal has delegated authority to the alleged agent by words which expressly authorize the agent to do the delegated act. If there is evidence of that character, the authority of the agent is express. If no express authorization is found, then the evidence must be considered to determine whether the alleged agent possesses implied powers. The test utilized by this court to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it

appears there was an implied intention to create an agency, in which event the relation may be held to exist, notwithstanding either a denial by the alleged principal, or whether the parties understood it to be an agency. (citing cases.)" p. 370.

Here, there is no evidence whatsoever that either of the doctors *intended* the receptionists to be agents authorized to receive service of process. A case directly in point is *Morfessis v. Marvins Credit*, 77 A.2d 178 (D.C. 1950). There, service was made by leaving a copy of the summons and complaint with the defendant's secretary who was authorized by him to receive his business papers and mail. A deputy marshal testified that the secretary told him that appellant seldom came in the office, that she would accept the papers for him and she signed a written statement to that effect. The trial court sustained the service of process on the basis that its statute allowed service on an individual by delivery of the papers to an agent authorized by appointment to receive them. The appellate court reversed that decision, holding:

"The trial court apparently sustained the service of process under that portion of its rule 4(c)(1) which permits service on an individual by delivering copy of the summons and complaint 'to an agent authorized by appointment or by law to receive service of process.' As no claim is made that appellant's secretary was authorized by law to receive service, the question is whether she was authorized by appointment. The quoted portion of the rule is taken verbatim from F.R.C.P. 4(d)(1). There is a scarcity of cases construing that portion of the rule, but Moore's Federal Practice (2d Ed.), Vol. 2, § 4:12, says: 'The phrase "an agent authorized by *appointment* to receive service of process" is intended to cover the situation where an individual *actually* appoints an agent for that purpose.' Barron and Holtzoff's recent work on Federal Practice and Procedure, Vol. 1, § 177, points out that the agent of an individual for other purposes is not necessarily authorized to receive service.

"In this case there is no evidence of any actual appointment by appellant of Miss Tsoulias as agent to receive service. Her statement, if she made such a statement, that she was authorized to receive service was nothing more than her conclusion and was not binding on appellant. The fact that she was appellant's secretary and only office employee in no way tended to establish her agency to receive service of process; and her authority to receive 'business papers and mail' cannot be construed to include authority to receive service of process. The fact that appellant never instructed his secretary not to accept service of legal papers is of no consequence. It does not follow that such an employee has authority to do something simply because she was not forbidden to do it. And the fact that appellant took the papers from his secretary and did not reprimand her for having received them is likewise without significance. We see no evidence in the record justifying a finding that appellant's secretary was his agent authorized by appointment to receive service of process. If it were otherwise, then almost anyone who employs a secretary whose duties include receiving mail and business

communications would find himself having unknowingly and unintentionally appointed an agent with authority to receive service of process. Such a result in our opinion was not intended by the rule." 77 A.2d at 179-180. See also Annot., 26 A.L.R.2d 1082, 1086.

As an alternative argument, plaintiffs allege that defendants should be estopped from denying that an agency relationship existed because neither defendant had ever objected to defective service of *subpoenas* in previous cases and had always appeared in court. The doctrine of apparent or ostensible authority is predicated upon the theory of estoppel (*Brown v. Wichita State University,* 217 Kan. 279, 287, 540 P.2d 66 [1975], *modified on rehearing* 219 Kan. 2, 547 P.2d 1015 [1976]), and the two concepts, for all practical purposes, may be treated identically. 2 Williston on Contracts § 277B (3rd ed. 1959); 3 Am. Jur. 2d, Agency § 76.

The doctrine of estoppel was recently discussed by the Kansas Supreme Court in *Lines v. City of Topeka,* 223 Kan. 772, 577 P.2d 42 (1978):

" '. . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or *silence when it had a duty to speak,* induced it to believe certain facts existed. It must also show it *rightfully relied and acted upon such belief* and would now be prejudiced if the other party were permitted to deny the existence of such facts. (*Wichita Federal Savings & Loan Ass'n v. Jones,* 155 Kan. 821, 130 P.2d 556; 31 C.J.S., Estoppel, § 59, p. 367.)' " 223 Kan. at 780 (emphasis added).

There is no definite rule as to when the doctrine will be applied; each case must be determined on its own facts. *Coffey v. Stephens,* 3 Kan. App. 2d 596, 597, 599 P.2d 310 (1979).

Even though it is undisputed that there was no communication between either of the defendants and the sheriff's department regarding service of process, plaintiffs assert that defendants' silence in the face of the faulty subpoena service estops them from now claiming insufficient service. The defendants had no duty to object to the faulty service of subpoenas in these previous actions. As a willing participant in a trial (*i.e.,* Dr. Sumner as county coroner), it would be highly irregular to challenge the validity of service of a subpoena; certainly the failure to do so could not be viewed as a bar to such a challenge in an action involving a *petition and summons* that call for a *personal* action

against the served person and in which he has much greater stakes.

It is also questionable whether *plaintiffs* have the right to assert an estoppel since they were not personally involved in any of the previous lawsuits in which defendants failed to object. In *Reno v. Beckett,* 555 F.2d 757, 770 (10th Cir. 1977), the Circuit Court of Appeals, applying Kansas law, held:

"Kansas law is clear that a position taken by a party in one suit cannot be claimed as working an estoppel in another suit in favor of a party who was a stranger to the first suit. *Mickadeit v. Kansas Power & Light Co.,* 174 Kan. 484, 257 P.2d 156 (1953); *Betts v. Gilbert,* 149 Kan. 431, 87 P.2d 637 (1939); *Kington v. Ewart,* 100 Kan. 49, 164 P. 141 (1917); *First Nat'l Bank v. Duncan,* 80 Kan. 196, 101 P. 992 (1909); *Peterson v. Warner,* 6 Kan. App. 298, 50 P. 1091 (1897)."

Here, neither plaintiffs nor defendants were actual parties to the previous proceedings. Furthermore, as mentioned earlier, plaintiffs could have discovered the improper service by simply examining the returns of service which on their faces showed the error. Equitable estoppel is not available to one who because of his own acts or failure to act has suffered a loss. Equity aids the vigilant. *Bowen v. Westerhaus,* 224 Kan. 42, 50, 578 P.2d 1102 (1978). Moreover, the record is devoid of evidence that plaintiffs believed the service to be sufficient because the sheriff's department informed them that this was an acceptable means of service on defendants. Instead, it appears that defendants' motions challenging the service prompted plaintiffs' initial communications with the sheriff. In short, plaintiffs have failed to establish reliance, a critical element of estoppel. As further stated in *Bowen:*

"The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, *has in good faith relied thereon." 224* Kan. 42, Syl. ¶ 3 (emphasis added).

Plaintiffs' failure to show good faith reliance or any reliance at all on the alleged agency relationship removes the possibility of finding apparent authority. It does not appear from the record that plaintiffs had any personal knowledge of defendants' prior conduct concerning the subpoenas or the sheriff's practice of leaving them with the receptionist.

The affidavit of defendant Bayles filed with his original K.S.A. 60-212(*b*) motion stating simply that he had been "served" does not prevent his later challenge of the service. The affidavit does

*not* state that service was proper, nor do we deem it sufficient to estop defendant Bayles from subsequently amending the motion to which the affidavit was attached. The trial court did not err in finding plaintiffs' service of process defective.

Plaintiffs contend that since defendants admitted having received the service left at their offices on February 15, 1978, they had actual notice, and plaintiffs should have been allowed to amend their defective service of process obtained on February 15, 1978, to reflect the personal service obtained on defendants after the two-year statute of limitations had expired; that the amendment would then relate back to February 15, 1978, and plaintiffs would be allowed to maintain this action.

Although the exact issue has not been considered before, we believe that we are duty-bound to follow what we perceive to be the existing law in the State of Kansas absent some indication that the Supreme Court would change the law if faced with this set of facts. Traditionally, Kansas has held that jurisdiction of the person of the defendant can be acquired only by issuance and service of process in the method prescribed by statute, or by voluntary appearance. *Haley v. Hershberger,* 207 Kan. 459. As noted earlier in this opinion, Kansas has consistently held that jurisdiction cannot be acquired over an individual by leaving a copy of the petition and summons with his or her secretary, even though the secretary promptly delivers the paperwork to the defendant.

Historically, Kansas has permitted process to be amended so that obvious errors are corrected and the return speaks the truth. *E.g., Rockey v. Runft,* 191 Kan. 117, 379 P.2d 285 (1963); *Young v. Newbold,* 114 Kan. 86, 217 Pac. 269 (1923); *McPherson v. Street Railway Co.,* 101 Kan. 550, 167 Pac. 1070 (1917); *Alford v. Hoag,* 8 Kan. App. 141, 54 Pac. 1105 (1898). Amendments have been allowed so as to correct form and clerical errors, but they have not been allowed so as to permit reservice or some other act that is necessary to make insufficient service of process sufficient. Plaintiffs argue that amendments of this nature are authorized by virtue of K.S.A. 60-313, which states:

"At any time in his or her discretion and upon such terms as he or she deems just, the judge may allow any process, return or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

Highly respected authorities in Kansas have stated that K.S.A. 60-313 is not at variance with former practice (Gard's Kansas C. Civ. Proc. 2d § 60-313 [1979]) and would seem to require the same results as those reached under prior law (Shurtz, *Civil Practice*, 14 Kan. L. Rev. 171 [1965]); and cases interpreting its predecessor (G.S. 1949, 60-759) seem applicable to K.S.A. 60-313 (Vernon's Kansas C. Civ. Proc. § 60-313.1 [1965]).

The federal equivalent to K.S.A. 60-313 is Fed. R. Civ. Proc. 4(h). Other than the use of different language to eliminate previously existing "sexist" language, the two are identical.

The Kansas Supreme Court noted in *Stock v. Nordhus,* 216 Kan. 779, 782, 533 P.2d 1324 (1975), that, traditionally, the Kansas courts have followed the interpretation of federal procedural rules after which our own have been patterned, thereby making the federal law highly persuasive authority here. Our review indicates federal law is irreconcilably split, although there is some federal authority that includes *service* of process within the amendments authorized by Federal Rule 4(h); and when such amendments are permitted, the reservice relates back to the date of the original service. When no substantial prejudice results from the loss of a statute of limitations defense, such amendments are permitted and their allowance is not an abuse of discretion. *Smith v. Boyer,* 442 F. Supp. 62 (W.D.N.Y. 1977); *C. J. Wieland & Son Dairy Products Co. v. Wickard,* 4 F.R.D. 250 (E.D. Wis. 1945); 4 Wright & Miller, Federal Practice & Procedure: Civil § 1131 (1969); Annot., 2 A.L.R. Fed. 513.

A number of jurisdictions have for various reasons rejected the line of authority suggested by plaintiffs. A strict reading of our statute and Federal Rule 4(h) gives authority to amend process, proof of service or return of service. They do not mention *service* of process, although there is a clear definitional distinction between process and service of process. (Compare K.S.A. 60-212[b][4] with [b][5].) One of the more common rules of statutory interpretation is that the mention or inclusion of one thing implies the exclusion of another. This rule may be applied to assist in determining actual legislative intent which is not otherwise manifest, but the maxim should not be employed to override or defeat a clearly contrary legislative intention. *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977). Thus, as we view it, statutory construction suggests that service of process was not

intended to be amendable under the provisions of the statute. Support for this construction is found in *Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160 (3rd Cir. 1976). Other authorities allowing amendment of service appear to be based on the premise that there has been substantial compliance with the rules governing service of process. See *Barber v. Tuohy,* 33 Mich. App. 169, 189 N.W.2d 722 (1971). Service on a secretary or receptionist in Kansas, however, does not amount to substantial compliance.

If plaintiffs are to obtain the benefit of the relation back rule adopted by Federal Rule 4(h), they will have to do so by virtue of a change in what we perceive to be existing law in Kansas, which change we are powerless to make. That change, if made, must come from the Supreme Court.

We are cognizant of and have carefully considered plaintiffs' argument concerning *Marr v. Geiger Ready-Mix Co.,* 209 Kan. 40, 495 P.2d 1399 (1972). We agree that the rule in *Marr* does seem somewhat inconsistent with the result reached in this case in that *Marr* allows one who names a wrong party to subsequently amend pursuant to K.S.A. 60-215(*c*) and substitute a party after the statute of limitations has run so as to have the amendment relate back to confer jurisdiction, even though the original service was served on an *employee* of the individual defendant who was subsequently substituted for a nonexistent corporation that had been named as a defendant in the original suit. As we read *Marr,* if the original suit had named E. W. Geiger, Jr., as defendant instead of Geiger Ready-Mix Co., service on an employee of Geiger's would not have conferred jurisdiction on E. W. Geiger, Jr., even though he had actual notice of the suit, just as the defendants in the case at bar did, and a subsequent amendment would not have been permitted to show compliance with the service statute by personal service after the statute of limitations had run so as to relate back to the date of the original service. The adoption of plaintiffs' position appears at first glance to be compatible with the rationale in *Marr.* The Supreme Court seems to be saying, however, that the question of proper service is not material when the substituted defendant has informal notice (as the defendants in this case had) as it is a substitution of parties that is being considered under K.S.A. 60-215, as opposed to consideration of 60-313 in this case.

We conclude that under existing Kansas law the statute of

limitations had run against the plaintiffs' cause of action before jurisdiction was obtained over the defendants.

Affirmed.